UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BENZHEN CHEN,              )
        Petitioner        )
                          )
v.                        )     CIVIL ACTION
                          )     NO.  08-10850-RCL
UNITED STATES,            )
        Respondent        )

## MEMORANDUM OF DECISION

Young, D.J.                              September 24, 2009

## I. INTRODUCTION

_____Benzhen Chen ("petitioner" or "Chen") moves to pursuant to 28 U.S.C. §2255 to vacate or correct his sentence for a new trial, or, at a minimum, for an evidentiary hearing.  Chen is currently serving a 51-month sentence imposed in this Court after he pled guilty to one count of conspiracy to distribute methylenedioxymethamphetamine ("ecstasy"), in violation of 21 U.S.C. §846, and one count of aiding and abetting the possession with intent to distribute ecstasy, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2.  He asserts seven grounds for relief: (1) his counsel was constitutionally ineffective, (2) his guilty plea was not voluntary, (3) there is a fatal variance between his grand jury indictment to which he pled guilty and the information used by the government, the probation department, and the Court during the Rule 11 hearing, (4)  the changes and

1

revisions in the offenses for which he was ultimately punished
resulted in double jeopardy and violated his due process rights,[1]
(5) the procedure used to determine the full extent of his
responsibility under 18 U.S.C. §841[2] was unconstitutional, (6)
the failure of the court to provide an explanation of the weight
given to sentencing factors violates 18 U.S.C. §3553(a), and (7)
he was denied his right to consular advice and contact in
violation of the Vienna Convention on Consular Relations.  The
United States has moved summarily to dismiss the petition,
arguing that Chen's claims are factually inaccurate, legally
insufficient, and not cognizable in a section 2255 proceeding.[3]

---

[1] The petitioner argues that the government used a "trigger"
quantity of ecstasy to increase the maximum penalty.  (Pet'r Mot.
13).  The petitioner incorrectly sets out the facts of record.
The quantity of drugs charged in the indictment – 30, 643
ecstasy pills – is the quantity of drugs for which the petitioner
was held accountable in sentencing. (Sentencing T. vol. 1, 23,
March 26, 2007).  This claim is summarily dismissed.

[2] This is a typographical error.  Section 841 relates to the
importation, manufacture, and distribution of explosive
materials.  *See* 18 U.S.C. §841.  The Court will assume Chen's
objection goes to the procedure used to determine his culpability
under section 846.

[3] Alternatively, the government submits that if
the Court determines that additional factual
development is necessary [regarding Chen's claims of
ineffective assistance of counsel] then the government
urges the Court to order Chen to supplement his
petition by:
a. ordering him to confirm in writing that he has
waived his attorney-client privilege with respect
to any issue concerning effective representation
by his attorney and to supplement his petition
with his version of every significant conversation

## II. FACTS & PROCEDURAL HISTORY

### A. Chen's Seizure and Arrest for Ecstasy

_____On April 5, 2006, as part of an ongoing investigation led by

the Drug Enforcement Agency ("DEA"),[4] law enforcement authorities

("agents") pulled over Kuoch's vehicle (McDonnell Aff. ¶ 35).

Seated in the rear of the vehicle were Chen and Weiying Gan

("Gan"), and a suitcase which was locked.  Id.  Agents took all

---

> or communication he had with counsel pertaining to
> the claims of ineffectiveness made in his motion,
> together with any documents that he may have which
> bear on the issue . . . and
> b. upon of receipt of such waiver and supplement,
> order Attorney Colgan to file an affidavit under
> oath responding to Chen's allegations and setting
> forth pertinent details concerning conversations,
> correspondence and/or relevant documentation
> exchanged with Chen, before or after his guilty
> plea, concerning the allegations Chen had made
> against Colgan.

(Mot. Opp'n 14).

[4] In December 2005, the DEA commenced an investigation into
the narcotics trafficking activities of Heng Kuoch ("Kuoch").
(McDonnell Aff. ¶ 7).  On four separate occasions from January
2006 through March 2006, an undercover law enforcement agent
("UC") from DEA received ecstasy from Kuoch or his step-son,
Ramsei Duong.  Id. ¶ 8-24.  From the middle to the end of March
2006, the UC and Kuoch discussed a large ecstasy transaction.
(Change of Plea Tr. 25).  On April 1, 2006, Kuoch and the UC
considered conducting a transaction of 20,000 ecstasy pills at a
price of $3.50 per pill.  Id.  On April 4, 2006, Kuoch asked the
UC to travel with him to New York to obtain the pills from a
source he had there.  Id.  The UC declined.  Id.  The following
day, Kuoch informed the UC that he would be meeting the source
and would have the pills that night.  Id.  These facts led to the
surveillance of Kuoch's vehicle in Chinatown section of Boston on
April 5, 2006.

of the vehicle's occupants to the Lowell Police Station ("police station") for questioning.  Id.  At the police station, Gan told agents that she obtained the suitcase from a man known as 'Wong' in Canada and Wong instructed her to deliver the bag to a gentleman in New York, who she identified as Chen.  (McDonnell Aff. ¶ 37).  Gan also informed agents that she and Chen took a bus from New York to Boston, where they met Kuoch.  Id.  When questioned by agents, Chen stated that he had taken a bus to Boston from New York to collect a $2,500 debt owed by a friend. Id. ¶ 39.

Initially, Chen denied  traveling with Gan.  Id.  However, video surveillance obtained from South Station showed Chen and Gan together, with Gan carrying the suitcase.  (Change of Plea Tr. 27).  Additionally, searches of Gan, Kuoch, and Chen's phones revealed that calls were placed between Kuoch's phone and Chen's phone shortly after his arrival at South Station on April 5, 2006; between Gan and Chen's phones earlier that same day; between Chen's phone and the phones of Kuoch and Wong on April 4, 2006; and Chen's phone and the phones of Kuoch, Duong, Gan, and Wong a few weeks before April 5, 2006.  Id.  A subsequent search of the suitcase revealed that it contained approximately 30, 463 ecstasy tablets.  Id. at 26.

**B. Chen's Rule 11 Hearing**

Based on this information, Chen was charged with conspiracy to possess with intent to distribute ecstasy, in violation of 21 U.S.C. §846, and aiding and abetting in possession with intent to distribute ecstasy in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2. (Compl. 1, United States v. Chen, (D. Mass. 2006) (No. 06M-1079-JGD)). On December 12, 2006, represented by David Colgan ("defense counsel" or "Colgan"), Chen pled guilty to both counts. (Change of Plea Tr. 30-31). At the plea hearing, the Court engaged Chen in a detailed colloquy. The Court described the offenses with which the petitioner was charged, and explained the significance, as well as the consequences, of a plea of guilty. Id. at 4. Under oath, the petitioner answered a series of questions asked by the Court, to determine that the petitioner's plea was both knowing and voluntary. Id. at 4-14. The Court asked Chen if he was satisfied with the representation provided by counsel and, in particular, the advice given regarding the decision to plead guilty, to which the petitioner replied in the affirmative. Id. at 8. The Court asked petitioner if he was pleading guilty of his own free will, and he replied in the affirmative. Id. at 9. The Court also informed Chen that if his change of plea was accepted, he would be guilty of the two felonies by his plea alone. Id. The Court continued by informing Chen of the maximum statutory penalty he faced on

5

each of the counts with which he was charged.[5]  _Id._ at 13.
Afterwards, the Court asked the petitioner if he understood all
of the possible consequences of pleading guilty and he replied in
the affirmative.[6]

---

[5] The Court informed the petitioner that on each count he
"face[d] a maximum term of imprisonment of 20 years, a period of
supervised release at least three years, a fine of $1 million,
and a special assessment of $100," as well as the possibility of
deportation.  (Change of Plea Tr. 13).

[6] The petitioner did pose some questions regarding the charge
of possession of ecstasy with intent to distribute.  (Change of
Plea Tr. 20).  Defense counsel informed the court that the
petitioner stated he had some difficulty comprehending the
offense as he did not physically hold the suitcase and another
individual was in actual possession of it.  _Id._  In response, the
Court explained the elements of the offense and the ways in which
the government could prove possession, namely through the theory
of constructive possession.  _Id._ at 21.  The following exchanged
occurred between the Court and Chen:
THE COURT: You also are charged with possession of ecstasy
with intent to distribute.  And the government has two ways to
prove this crime.  The first, the government can prove that you
actually possessed the ecstasy described in the indictment;
second, you knew that what you possessed was ecstasy or was an
illegal or controlled substance; and third, that you either
distributed the ecstasy or intended to distribute.
Now, I just want to say a word about possession.  The
government can prove that you actually possessed it, that you
held it physically on your person, or the government can prove
that you possessed the substance by something called constructive
possession.  Constructive possession is possession in which you
do not hold the object in your person, on your person, but that
you have it within your control and you have the intention to
control it, even though you do not have it on your person.  Do
you understand?
THE DEFENDANT: I understand.
THE COURT: You exercise control or dominion over the object
and you intent to exercise that control and dominion over the
object.
THE DEFENDANT: I did not have control of the suitcase.  I
didn't even touch it.  It was the woman who held the case.
THE COURT: Then let me add something else.  Remember I said

Id. at 14-16.

The Court then directed Assistant United States Attorney Sandra Bower ("Ms. Bower" or "the government") to outline the government's evidence were the case to go to trial.  (Change of Plea Tr. 24).  The Court encouraged Chen to listen carefully, as after the end of the government's explanation the court would

---

there were two ways the government can prove your guilt of this offense?  The government can prove that someone else possessed the ecstasy with intent to distribute it and that you aided and abetted that other person.  And by aiding and abetting a person, the government has to prove that you knew that the crime of possession with intent to distribute was being committed by someone else, that you did something for the purpose of assisting the commission of a crime, and that you acted with the intention that the crime be committed.  Do you understand?
     THE DEFENDANT: Yes.
     THE COURT: So the government can prove that you possessed this ecstasy with intent to distribute either actually or constructively, as I've said, or the government can prove that you aided and abetted someone else in the commission of a crime. Do you understand?
     MR. COLGAN: Judge, we didn't have a response to that.  He shook his head, but he didn't –
     THE DEFENDANT: Now I understand.
     THE COURT: You do understand now.
     Ms. Bower, do you think I should add anything else?
     MS. BOWER: No, your Honor.
     THE COURT: Mr. Colgan, do you think I should explain anything –
     MR. COLGAN: No, but could I ask for 15 seconds just to consult with my client?
     THE COURT: Surely.
     (Defendant conferred with counsel).
     MR. COLGAN: Thank you, Judge.
     THE COURT: Mr. Chen, do you understand the possession count charged against you, possession with intent to distribute?
     THE DEFENDANT: Understand.
     THE COURT: Any question now in your mind?
     THE DEFENDANT: No more question.  I'm just worried about immigration consequence.
(Change of Plea Tr. 21-23).

seek his agreement or disagreement with anything that was put
forth by the government.  Id.  At the end of the government's
explanation, Chen vaguely stated to the court that there was a
prior situation with his cell phone of which he had no knowledge
and he was unaware of what occurred before he arrived in Boston.[7]
Id. at 28.  The Court asked Chen if he had any disagreement with
the government's outline of the defense conduct and after
conferring with his counsel, Chen replied in the negative.  Id.
at 29.  The Court then asked Chen if he was satisfied that he
understood everything that had occurred during the proceedings
and Chen replied in the affirmative.  Id. at 31.  Finding a

---

[7] The following discussion took place:
THE COURT: Mr. Chen, stand, please.
Mr. Chen, as translated to you, did you understand
everything that Ms. Bower said?
THE DEFENDANT: Yes.
THE COURT: Do you have any questions about anything she
said?
THE DEFENDANT: That was what happened.  I did – there was
some telephone conversations.
THE COURT: Well, she said a lot more than just telephone
conversations.
(Defendant conferred with counsel).
THE DEFENDANT: I have no other questions on the report,
except for something happened prior to my cell that I have no
knowledge of.
THE COURT: Okay.  Something happened prior to what?
(Defendant conferred with counsel).
THE DEFENDANT: What I meant is, I don't understand what they
did before I came.
MR. COLGAN: Judge, what I think he means to say is that he
did not have – play a role in every part of this particular
conspiracy.
THE COURT: That's what I understood that to mean.
(Change of Plea Tr. 28-29).

factual basis for the plea and making the determination that the change of plea was both knowing and voluntary, the Court accepted Chen's plea of guilty.  <u>Id</u>. at 32.  The Court scheduled the sentencing hearing for March 26, 2007.  <u>Id</u>. at 33.

### C. Chen's First Sentencing Hearing

On March 26, 2007, Ms. Bower brought to the attention of the Court a "potential issue that [she] wish[ed] to raise . . . with the [c]ourt."  (Sentencing Tr. vol. 1, 4, March 26, 2007).  She stated to the Court that just moments before the commencement of the sentencing hearing, Chen "had indicated that he didn't realize that there were drugs in the suitcase until the police came."  <u>Id</u>.  Bower raised this issue because she was concerned that Chen may not have fully disclosed all the facts necessary to obtain the benefit of the safety valve reduction.  <u>Id</u>. at 5. The Court engaged Bower and Colgan in a discussion regarding the meaning of Chen's comment and its consequences on the proceedings.  <u>Id</u>. at 5-10.[8]  After the Court was satisfied that

---

[8] MS. BOWER: There is a potential issue that we wish to raise — I wish to raise with the Court.  We were finishing up, clarifying some questions just prior to sentencing today.  I can report to the Court that we believe the defendant has been truthful about the offense. . . [however,] at the end of the session, he said something that caught, frankly, both me and defense counsel by surprise; and that is, that he had indicated that he didn't realize that there were drugs in the suitcase until the police came.  He acknowledged during the proffer that he believed he's guilty of conspiracy, believes he's guilty of aiding and abetting, but he did raise — or did say that he didn't realize there were drugs in the suitcase.
THE COURT: You know, there's something in the presentence

it understood Chen's comment to mean that he did not have precise

knowledge of the contents of the bag but knew its contents were

illicit,[9] it continued with the proceedings and the petitioner

_____

report like that, isn't there?  I seem to remember some
suggestion in the presentence report –
      MS. BOWER: I believe what the presentence report is [sic]
that he knew there was a controlled substance in the suitcase.
      THE COURT: I see, yes.
      MS. BOWER: And that's what he had indicated at the plea –
      THE COURT: Yes.
      MS. BOWER:  – through a very thorough colloquy.  He is now
for some reason – and we have the difficulty of language as well,
because of his – we're speaking through an interpreter – I am
just presenting this to the Court.
      I think that aside from this potential glitch, and 'glitch'
is not the right word, but I can't think of a better word, that
he has met criterion five.
(Sentencing Tr. 4 - 5).

      [9] The discussion went as follows:
      THE COURT: So this isn't a question about his not giving a
knowing and intelligent
plea – I mean, knowing and voluntary plea, but rather whether he
has fully disclosed everything he should disclose to get the
benefit of the safety valve.
      MS. BOWER: That's correct.  And it just caused me a little
bit of a wrinkle of concern.
      MR. COLGAN: Judge, I don't mean to interject, but I don't
think that is a concern.
      I think the government is, in fact, satisfied that Mr. Chen
has revealed everything that he knows about this offense, the
ongoing offense, the parties in this offense.  He's just now to a
certain extent qualifying what he said at the time of the entry
of his plea with respect to his knowledge of the contents of the
suitcase.
      I'm almost inclined to ask the Court to disregard it in its
entirety in that it seems like a moot point –
      THE COURT: Well, unless he's seeking to withdraw his plea,
and even if he is, we talked about that, we talked about the fact
that the government had to establish that he knew what the
conspiracy was all about, that he joined the conspiracy intending
to have it succeed.  And he acknowledge, after Ms. Bower made the
representation, that he had no disagreement with her
representation about the facts.

was brought out into court to commence the actual sentencing hearing.  Id. at 9-10.

During the sentencing hearing, the Court engaged in a lengthy discussion with the government, defense counsel and the probation department ("probation") regarding the appropriate base offense level for Chen, as well as the offense level reductions he might to granted based upon the circumstances and the context of the offenses to which he pled guilty.  (Sentencing Tr. vol. 1, 13-25, March 26, 2007).  Probation determined Chen was accountable for 8,400 grams of ecstasy[10] and set his base offense level at thirty-six (36); however, probation recommended a three-level reduction for Chen's minor role, resulting in a base offense level of thirty-three (33).  Id. at 13.  Additionally, probation recommended Chen be awarded a three-level reduction for sparing the government the burden and expense of a trial, a two-level reduction for his safety valve proffer, and another two-level reduction for his minor role in the conspiracy and

---

MR. COLGAN: That's correct.
(Sentencing Tr. 5 - 6).

[10] Probation held Chen accountable for the additional controlled substance, methamphetamine, contained in the ecstasy. (Sentencing Tr. vol. 1. 14, March 26, 2007).  Both the government and defense counsel argued against this adjustment, as a co-defendant who had already been sentenced had not been held accountable for the methamphetamine found in the ecstasy.  Id. at 28.

transaction, bringing the adjusted offense level to twenty-six (26).  Id. at 14.

As the government did not hold Chen accountable for the methamphetamine contained within the ecstasy, it started Chen off at a base offense level of thirty-four (34), offering a three-level reduction for avoiding trial and a two-level reduction for the safety value proffer.  (Sentencing Tr. vol. 1, 15, March 26, 2007).  The government disputed Chen's eligibility for the two-level minor role reduction, bringing its calculation for the adjusted offense level to twenty-nine (29).  Id.  Defense counsel agreed with the government's position that the base offense level ought begin at thirty-four (34).  Id. at 16.  Defense counsel also agreed with probation's calculation that Chen qualified for a three-level adjustment for his minor role, leading to a base offense level of thirty-one (31).  Id.  Defense counsel again agreed with probation's recommendations that Chen receive a three-level reduction for pleading guilty, a two-level reduction for the safety valve, and an additional two-level reduction for his minor role, bringing defense counsel's calculations to an adjusted offense level of twenty-four (24).  Id. at 16-17.

The Court accepted defense counsel's calculations and determined upon an adjusted offense level of twenty-four (24).  Because Chen had no prior criminal convictions, the Court placed him within Criminal History Category I.  (Sentencing Tr. vol. 1,

25, March 26, 2007).  The advised sentenced provided by the
Sentencing Guidelines thus fell in the range of 51 to 63
months.[11]  Id. at 26.

The Court inquired of Chen if he would like to speak before
his sentence was imposed, and as Chen began to speak defense
counsel interrupted and asked the court if he could stop the
defendant at that point.  Id. at 35.  The Court informed defense
counsel that it was simply seeking Chen's allocution, but still
granted defense counsel's request to speak to his client.  Id.
As defense counsel conferred with his client, Chan, the court
translator, informed the court that "[he] got an impression that
this kid [Chen] is under tremendous pressure last time, this time
[sic]."  Id.  Chan informed the court that "[he thought] that the
defendant always want[ed] to reinforce the message that he was
not guilty," and that he himself was in a "huge dilemma" and felt
he should himself withdraw from the case.  Id. at 36-37.  The
Court interrupted the exchange occurring between Colgan and Chan
in open court and suspended the remainder of the proceedings.
Id. at 37.  The Court also informed the parties that it would
seek a new court translator for the case because of the events

_____

[11] The government argued the range ought be 87 to 108 months
based on its position that Chen did not qualify for the minor
role reduction.  (Sentencing Tr. vol.1, 28, March 26, 2007).

that had occurred in the courtroom.  <u>Id</u>. at 37.[12]

---

[12] The incident occurred as follows:
THE DEFENDANT: (Through interpreter) In this whole – I never thought of committing any crime.  I was trying to recover, collect the money that Lou Gan owes my friend and my friend owes me.
MR. COLGAN: Judge, if I may stop the defendant at this point.
THE COURT: This is his statement.
MR. COLGAN: I wanted to have an opportunity to speak with him before he made a statement, which I believe would be appropriate.
THE COURT: I'm really asking for his allocution.
MR. COLGAN: Judge, I'll withdraw my request.
THE COURT: Le me say this.  You are representing him, and if you think you need to speak to him, go ahead.  So go ahead.
(Defendant conferred with counsel).
MR. COLGAN: Judge –
THE COURT: What's happening?
Sir, what's going on, please?
MR. COLGAN: Judge, I submit that the interpreter is making some –
INTERPRETER: I got an impression that this kid is under tremendous pressure last time, this time.  I can withdraw my service.  I don't think I'm serving this Court well.  But –
THE COURT: What do you mean, sir? . . .
MR. COLGAN: Well, Judge, the problem is that I just instructed my client or commented and discussed with him that it is very dangerous if he says anything here today that is inconsistent with what he said at the time of his plea, that that could result in an impact on his sentence.
Mr. Chan feels uncomfortable interpreting that, and I think –
INTERPRETER: What he said – I'm just understanding the totality.
MR. COLGAN: The totality of this case, Mr. Chen has been under a lot of pressure.
THE COURT: One at a time, please.
What's going on here?
INTERPRETER: I think that the defendant always want [sic] to reinforce the message that he was not guilty –
THE COURT: Did he tell you to tell me that?
INTERPRETER: I mean that –
THE COURT: Are you expressing your view, Mr. Chan, or the view that the defendant has –
INTERPRETER: I mean, you know, that's why I say I should

### D.  Chen's Second Sentencing Hearing

On May 24, 2007, the Court resumed the sentencing proceedings.  (Sentencing Tr. vol. 2, 3).  At the beginning of the proceedings, the Court asked Chen a series of questions to determine if he was, indeed, pleading guilty of his own volition and if he was satisfied with the performance of his counsel.  Id. at 4-6.  After Chen replied that he had pled guilty because he was in fact guilty and that he was satisfied with the performance

---

withdraw from this assignment, you know.  I should withdraw myself because I'm really in a huge dilemma, I mean, a huge dilemma.
    THE COURT: A what?
    MR. COLGAN: He said he's in a huge dilemma that carries over from our conversations upstairs that Ms. Bower –
    INTERPRETER: We're not supposed to divulge what he heard – what I heard – his conversation with his counsel, you know.
    MR. COLGAN: That's my concern, Judge.  My concern is that, most respectfully to Mr. Chan, he's supposed to be interpreting, and he's not –
    INTERPRETER: I've been doing this all way the way [sic], all the way, all the way. . .
    THE COURT: Excuse me, stop, both of you.
    I'm going to suspend this matter and I'm going to – I'll get a new interpreter and because I don't – there are things here that trouble me. . .
    Yes, I am going to do this because enough has happened here today to make me very concerned about what's going on here.
    I started out with Ms. Bower telling me what Mr. Chen said upstairs, then I had this business here at the end with Mr. Chen is about to tell me all I want to do is collect the debt.  It appeared to be that he's going to – he is asserting that's he not guilty of this offense.  And then we have this business with you and the interpreter.
    So I'm going to stop.  I'm going to get a new interpreter, Mandarin interpreter for Mr. Chen.
(Change of Plea Tr. 35 - 39).

15

of defense counsel, the Court continued the proceedings. Id. at 6. The Court also inquired of Chen whether he was satisfied he understood the Pre-Sentence Report and he replied that he was satisfied. Id. at 8.

The Court then committed Chen to the custody of the Bureau of Prisons for a term of fifty-one (51) months, placed him on supervised release for a term of three (3) years upon release from imprisonment, and ordered him to pay the mandatory special assessment fee of two-hundred dollars ($200). (Sentencing Tr. vol. 2, 8-9, May 24, 2007). A fine was not imposed, as the court determined Chen was unable to pay a fine. Id. at 8. Chen was credited for the approximately five (5) months he had already served at the time of sentencing. Id. at 10. Also, prior to the conclusion of the proceeding, the court informed Chen of his right to appeal his conviction if he "believe[d] that [his] plea of guilty was not voluntarily or intelligently given, or [he thought] there was some other defect in the proceedings that was not waived by [his] guilty plea." Id. at 11. Judgment in this case was entered on May 24, 2007, and became final on June 3, 2007, after expiration of the ten day period within which the defendant could have filed a notice of appeal. On May 13, 2008, the petitioner filed this motion pursuant to 28 U.S.C. §2255, seeking an evidentiary hearing and the correction or vacation of his sentence and a new trial.

---

### III. ANALYSIS

#### A. Standard of Review

The petitioner brings this motion action under 28 U.S.C. §2255 ("Section 2255"), alleging violations of his constitutionally protected rights.  The petitioner bears the burden of demonstrating by a preponderance of the evidence that he is entitled to relief, including demonstrating entitlement to an evidentiary hearing.  United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).  Generally, an evidentiary hearing is not required when a section 2255 motion "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974).  A petitioner's allegations are accepted "as true except to the extent they are contradicted by the record , inherently incredible, or conclusions rather than statements of fact." Pocaro v. United States, 784 F.2d 38, 40 (1st Cir. 1986).   Mack v. United States, 635 F.2d 20, 26 (1st Cir. 1980)(same).  Additionally, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."  Rule 4(b), Rules Governing Section 2255 Proceedings.

With the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),  a one-year statute of limitation

was imposed upon the filing of a petition under Section 2255.[13]

28 U.S.C. §2255(f).[14]  Additionally, although no exhaustion

requirements need be satisfied before the filing of a Section

2255 petition, Pratt v. United States, 129 F.3d 54, 60 (1st Cir.

1997), a petitioner procedurally may be barred from relief if:

(1) he failed to raise the claims he raises in his Section 2255

motion on direct appeal and could have done so, Reed v. Farley,

512 U.S. 339, 354 (1994), or (2) he files a Section 2255 petition

during the pendency of an appeal.  United States v. Gordon, 634

F.2d 638, 638 (1st Cir. 1980).

---

[13]A 1-year period of limitation shall apply to a motion under
this section.  The limitation period shall run from the latest
of—
> (1) that date on which the judgement of conviction becomes
> final;
> (2) the date on which the impediment to making a motion
> created by governmental action in violation of the
> Constitution or the laws of the United States is removed, if
> the movant was prevented from making a motion by such
> governmental action;
> (3) the date on which the right asserted was initially
> recognized by the Supreme Court, if that right has been
> newly recognized by the Supreme Court and made retroactively
> applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or
> claims presented could have been discovered through the
> exercise of due diligence.
28 U.S.C. §2255(f)(1) - (4).

[14] Judgment in this case was entered on May 24, 2007, and
Chen's conviction became final on June 3, 2007.  The petitioner
filed this petition on May 13, 2008, within the one-year period.
28 U.S.C. §2255(f).  Therefore, this petition satisfies the
statute of limitations requirement.

In the instant case, the petitioner did not raise any of the issues in his petition on direct appeal because he did not file an appeal.  It has long been held that a "collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).  "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  Id. at 166.  Therefore, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  Id. at 167.  "[The defendant] must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[15]  Id. at 170.

---

[15]In Massaro v. United States, 538 U.S. 500 (2003), the Supreme Court held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."  Massaro, 538 U.S. at 504.  Thus, Chen's ineffective assistance of counsel claim is not procedurally defaulted and need not meet the cause and prejudice standard articulated in Frady.  Id. at 506.  Consequently, the petitioner's ineffective assistance of counsel claim will be analyzed under the test articulated in Strickland.

### B.   Ineffective Assistance of Counsel Claims

Chen puts forth several acts and omissions by defense counsel which he asserts resulted in ineffective assistance during the criminal proceedings held against him.  Chen claims that defense counsel provided ineffective assistance by: (1) failing to consult with the petitioner regarding his wish to appeal, (2) failing to argue for or investigate petitioner's eligibility for the "safety valve" reduction, pursuant to 18 U.S.C. §3553(f),[16] and (3) demonstrating disinterest in communicating with the petitioner, including failure to notify the petitioner of important dates in the case, several miscommunications with both translators and withholding facts from the prosecution's case and the proceedings from the petitioner.  (Pet'r Mot. 1-6).

The Sixth Amendment of the United States Constitution guarantees "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. Amend. VI.  It has been determined that

---

[16] Chen claims that Colgan rendered ineffective assistance during the sentencing phase by failing to explore options for his client's eligibility for the "safety valve" benefit.  (Pet'r Mot. 5).  More specifically, Chen asserts he "was able and willing to proffer to the government in order to obtain the benefits of the safety valve, but his inability to speak English and his defense counsel's total neglect for the case were an insurmountable impediment."  Id.  This contention is simply inaccurate.  Chen participated in the safety valve proffer and received the two-level reduction for satisfying all the safety valve criteria.  Sentencing Tr. vol.1,  4-5, 15 (March 26, 2007).

the right to assistance of counsel is the right "to be assisted
by an attorney . . . who plays the role necessary to ensure that
the trial is fair." Strickland v. Washington, 466 U.S. 668
(1984).  "The Sixth Amendment recognizes the right to the
assistance of counsel because it envisions counsel's playing a
role that is critical to the ability of the adversarial system
producing a just result." Id. at 685.  Thus, "the right to
counsel is the right to effective assistance of counsel." McMann
v. Richardson, 397 U.S. 759, 771 n.14 (1970).

     To assert a claim of ineffective assistance of counsel, the
petitioner must demonstrate that his attorney: (1) rendered
performance that fell below an objective standard of
reasonableness and (2) that as a result of his attorney's
unreasonable performance he suffered actual prejudice.
Strickland, 466 U.S. at 687-88.  An attorney's performance is
judged by a standard of "reasonableness under prevailing
professional norms." Id. at 688.  Generally, "[c]ounsel is
strongly presumed to have rendered adequate assistance and made
all significant decisions in the exercise of reasonable
professional judgment." Id. at 690. Considering the totality of
the circumstances, an attorney's conduct must be evaluated from
his perspective at the time. Id. at 688.  Thus, the court's
review of counsel's performance must be "highly deferential."
Id. at 689.

21

The petitioner must also demonstrate that he has suffered actual prejudice as a result of his attorney's deficient performance, by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In the context of a guilty plea, to demonstrate prejudice the defendant must show that there existed a reasonable probability that "but for counsel's errors . . . he would not have pled guilty but would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

"[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Dugas v. Coplan, 428 F.3d 317 (1st Cir. 2005) (quoting Strickland, 466 U.S. at  668 (internal quotation omitted)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (quoting Strickland,  466 U.S. at 697 (internal quotation omitted)). Ultimately, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of

the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland,</u> 466 U.S. at 686.

1. <u>The Filing of an Appeal</u>

Chen first alleged that his counsel rendered ineffective assistance of counsel by failing to consult with him regarding his wish to appeal.  The petitioner states "[d]efense counsel withdrew from the case even [sic] he was told of the Petitioner's wishes to appeal." (Pet'r Mot. 1).  The petitioner contends that "Mr. Colgan failed to consult with [him] about his wish to appeal . . . [and] had a duty to explore the defendant's inclination as to appeal and to discuss appellate prospects and strategies with his client." <u>Id</u>. at 6.  The government argued in its opposition that Chen "does not state whether he instructed his counsel to pursue an appeal" nor "does [he] cite any particular grounds on which Colgan was to raise the appeal." (Mot. Opp'n 12).  Chen then changed his tune and state that "defense counsel failed to file a timely Notice of Appeal after being instructed to do so by [him]." (Pet'r Reply 1).

In cases where a defendant neither specifically instructs his counsel to file a notice of appeal nor specifically instructs his counsel not to do so, counsel nevertheless has

> a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in an

23

> appealing . [] Although not determinative, a highly relevant
> factor in this inquiry will be whether the conviction
> follows a trial or a guilty plea, both because a guilty plea
> reduces the scope of potentially appealable issues and
> because such a plea may indicate that the defendant seeks an
> end to judicial proceedings.  Even in cases when the
> defendant pleads guilty, the court must consider such
> factors as whether the defendant received the sentence
> bargained for as part of the plea and whether the plea
> expressly reserved or waived some or all appeal rights.
> Only by considering all relevant factors in a given case can
> a court properly determine whether a rational defendant
> would have desired an appeal or that the particular
> defendant sufficiently demonstrated to counsel an interest
> in an appeal.

Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).[17]  Additionally,
in this context, the defendant must show actual prejudice and
demonstrate that there is a reasonable probability that, were it
not for his counsel's deficient performance, he timely would have
appealed.  Id. at 484.

Here, at the end of the final sentencing hearing, the Court
was careful scrupulously to advise the petitioner of his right to
appeal:

> THE COURT: Mr. Chen, let me advise you that you may
> appeal your conviction of these offenses if you
> determine or believe that your plea of guilty was not
> voluntarily or intelligently given, or if you think
> there was some other defect in the proceedings that was
> not waived by your guilty plea . . . You may also
> appeal if you think there are some other fundamental
> defects in the proceedings.  You may also appeal under
> certain circumstances the sentence I've imposed on you,
> particularly if you think the sentence which I've

---

[17] "[T]he term 'consult' [is used] to convey a specific
meaning – advising the defendant about the advantages and
disadvantages of taking an appeal, and making a reasonable effort
to discover the defendant's wishes."  Roe, 528 U.S. at 478.

> imposed is contrary to law.  If you wish to appeal, you
> have to file a document called a notice to appeal . . .
> If you want to file a notice of appeal and you cannot
> pay the fee, you should advise the clerk of this court
> of those circumstances and the clerk will prepare and
> file a notice of appeal on your behalf.
> Do you understand, sir?
> THE DEFENDANT: I do.

The "representations of the defendant . . . constitute a

formidable barrier in any subsequent proceeding collateral

proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Chen fails to show that there is a reasonable probability

that but for Colgan's failure to consult with him he still would

timely have appealed.  Indeed, following Judge Lindsay's

meticulous safeguarding of Chen's rights at every step, there is

here not the slightest evidence that any appeal would be

meritorious. Regardless of the prospects for success, however,

when a defendant specifically instructs counsel to file an

appeal, failure to do so is objectively unreasonable. Roe, 528

U.S. at 479.  "[W]hen counsel fails to file a requested appeal, a

defendant is entitled to a new appeal without showing that his

appeal would likely have had merit." Id. at 477 (internal

quotation omitted) (internal citation omitted).  A lawyer who

disregards specific instructions from the defendant to file a

notice of appeal acts in a manner that is professionally

unreasonable." Ibid..  In that instance, "counsel's

constitutionally deficient performance deprives a defendant of an

appeal he otherwise would have taken, [and] the defendant has

made out a successful ineffective  assistance of counsel claim
entitling him to an appeal." Id. at 484.  In his reply,
petitioner baldly alleges that he specifically instructed defense
counsel to file a notice of appeal.  (Pet'r Reply 1).  Unlikely
as this may seem in light of the favorable disposition defense
counsel secured for Chen, Roe counsels against the summary
dismissal of this one aspect of the ineffective assistance of
counsel claim.  Accordingly, this claim will be denied without
prejudice to the filing, within 45 days of the date of this
order, a detailed affidavit setting forth the circumstances of
the alleged instructions to appeal and an explicit waiver of the
attorney client privilege so that Attorney Colgan can respond
thereto.  In the meantime, this case will be administratively
closed. Chen's failure to show that he suffered prejudice is
fatal to this ineffective assistance of counsel claim.

> 2.   The Petitioner Cannot Demonstrate that Defense
>      Counsel's Alleged Failure to Pursue His Best Interests
>      Resulted in Prejudice

The petitioner contends that defense counsel did not pursue
his best interests during the criminal proceedings against him.[18]

---

[18] The government states that "having failed to raise this
issue– indeed, having asserted that he was completely satisfied
with his counsel – Chen must now show an actual conflict which
prejudiced him," citing Cuyler v. Sullivan, 446 U.S. 335 (1980).
Cuyler is a case addressing multiple representation, i.e. an
attorney representing more than one defendant in the same case.
Even Cuyler stands for the proposition that "[a] guilty plea is
open to attack on the ground that counsel did not provide the
defendant with 'reasonably competent advice.'" Cuyler, 446 U.S.

Petitioner maintains that defense counsel's actions were so detrimental to him that Chan, the translator, "could not in good conscience, continue to participate in proceedings tainted . . . by the unconscionable behavior of . . . Mr. Colgan." (Pet'r. Mot. 4).  The petitioner alleges he "would never have known, because of his total ignorance of the [English] language, about his defense counsel's negative manipulation of the court proceedings against him, had it not been for the Court translator Mr. Chan." Id.  The petitioner maintains that defense counsel was not interested in communicating with the defendant and "neglected to notify the [petitioner] of dates [in the case] and had several miscommunications with the [court] translators." (Pet'r. Mot. 6).  Chen states that both Chan and the subsequent translator informed him that Colgan was not being truthful to him and withheld facts from the prosecution's case and the proceedings from him. Id.  Moreover, Chen alleges that "he changed his plea under duress and coercion from Mr. Colgan," (Pet'r Mot. 6), and "was directed and instructed by his defense counsel to agree to all questions posed by the Court during the [plea] colloquy." Id. at 9.  Chen maintains that these actions and omissions amounted to ineffective assistance of counsel during the proceedings.

---

at 344 (quoting McMann v. Richardson, 397 U.S. 759, 770-771 (1970)).  Thus, contrary to the government's position on this issue, this claim must be analyzed under the Strickland test.

Counsel's function is to assist the defendant, and hence
counsel owes the client a duty of loyalty." <u>Strickland</u>, 466 U.S.
at 688.

> From counsel's function as assistant to the defendant derive
> the overarching duty to advocate the defendant's cause and the
> more particular duties to consult with the defendant on
> important decisions and to keep the defendant informed of
> important developments in the course of the prosecution.

<u>Id.</u> at 688.  Under <u>Strickland</u>, Chen must demonstrate both that
his attorney's acts and omissions were objectively unreasonable,
<u>Strickland</u>, 466 U.S. at 687, and that he would not have pled
guilty but for counsel's acts and omissions.  <u>Panzardi-Alvarez</u> v.
<u>United States,</u> 879 F.2d 975, 982 (1st Cir. 1989).  Chen must
demonstrate both deficient performance and prejudice by a
preponderance of the evidence.  <u>See</u> <u>Lema</u> v. <u>United States</u>, 987
F.2d 48, 51 (1st Cir. 1993) (petitioner bears the burden of
demonstrating ineffective assistance by the preponderance of the
evidence).

Chen claims that Colgan's performance was deficient because
(1) he withheld information regarding the proceedings from him,
(2) had miscommunications with both court translators, and (3)
forced him to enter a plea of guilty against his will.[19]

---

[19] During the first day of sentencing, the Court inquired of
defense counsel whether he had an opportunity to read over the
PSR.  (Sentencing Tr. vol. 1, 11, March 26, 2007).  Defense
counsel replied that he had the opportunity to look it over, but
had only discussed it with the defendant "very briefly."  <u>Id.</u>
Defense counsel explained that he only had the opportunity to
review the original probation report and that he discussed

Although the record does contain some evidence that would support the petitioner's claims, the petitioner fails to sustain his burden of demonstrating counsel failed to act reasonably by a preponderance of the evidence.  "In civil matters including habeas, evidentiary proceedings are appropriate only where the party bearing the burden of proof on an element starts with enough evidence to create a genuine issue of fact." Bader v. Warden, 488 F.3d 483, 488 (1st Cir. 2007).  Here, the petitioner simply makes general allegations, failing to demonstrate to the Court that in his particular case the course of action that Colgan undertook was objectively  unreasonable.  See Perron v. Perrin, 987 F.2d 669, 673 (1st Cir. 1984) (counsel's performance must be examined "consider[ing] all the circumstances" and from his perspective at the time).

---

several components of the modified report with his client that day, just prior to the proceedings. Id.  Defense counsel maintained, however, that he did discuss "all the facts and circumstances within the report as they related to the offense and to [the defendant's] background" with him. Id. at 12. Defense counsel stated that it was the modified calculations of offense levels that he was unable to discuss with the defendant. Id.  At the later sentencing hearing defense counsel informed the Court that he had reviewed the modified PSR with the petitioner through the mail.  (Sentencing Tr. vol. 2, 7, May 24, 2007).

Furthermore, the petitioner alleges that counsel "brushed aside Petitioner's questions about quantity determination and number of relevant incidents with which he (Petitioner) denied involvement, with a terse "not now"; "this is not the time to discuss this";"Just say  yes, we'll talk about it later."" Id. at 9.

Furthermore, even assuming these claims were sufficient to support a finding that Colgan's performance was deficient, Chen has failed to allege or produce any evidence that he suffered prejudice as a result of Colgan's performance.  First, although Chen alleges that the translators informed him that Colgan withheld information from him, he fails to identify what information was held from him and how that information affected his decision to plead guilty.  Chen fails to show how the information, if provided by counsel, would have changed his decision to plea guilty.  Again, regarding Chen's claims concerning the miscommunications with the court translators, Chen fails to identify how these communications affected his decision to plead guilty or would have changed his decision to do so. Moreover, it is highly unlikely that there is a reasonable probability that Chen would have insisted on going to trial but for defense counsel's performance.  First, the Court engaged the petitioner in a lengthy, detailed plea colloquy.  Second, at the change of plea hearing, the Court specifically asked petitioner whether his plea was voluntary and he replied in the affirmative. (Change of Plea Hearing Tr. 9). Last, at the final sentencing hearing, particularly because of the confrontation which occurred between Colgan and Chan at the prior sentencing hearing, the Court once more asked Chen a series of questions to determine the

voluntariness of his plea.[20]  (Sentencing Tr. vol. 2, 4-6, May 24, 2007).  Chen replied that he was indeed pleading guilty of his own volition.  Id. at 6.  Chen was given ample opportunity to withdraw his plea of guilty if he chose to do so, or inform the court that he was being forced to plead guilty by defense counsel.  Chen fails to demonstrate any prejudice, even assuming his counsel did perform deficiently.  In fact, the record shows that Chen received a favorable sentence.[21]

---

[20] THE COURT: I want to talk to Mr. Chen before we go any further, however.

Mr. Chen, would you stand, please?

Mr. Chen, when we were last here, we had come to the moment just before I was to impose sentence on you, and the hearing concluded with some confusion which led me to wonder whether I should impose sentence on you because what you said that day, what you began to say that day and what Ms. Bower reported to me at the beginning of the proceedings suggested to me that there was some question about whether you had pleaded guilty because you were, in fact, guilty.

I asked you when I took your plea whether you were pleading guilty because you were, in fact, guilty; you told me yes.  At the time of sentencing, what you said to me at sentencing, or started to say at a sentencing, through the interpreter, and what Ms. Bower said to me at the beginning, caused me to wonder about that.

You are charged with conspiracy to distribute ecstasy with intent to distribute, and you pleaded guilty to those offenses.

I'm going to ask you now, Mr. Chen, at the time of your plea, which was in December 2006, did you plead guilty of your own free will to these offenses because you are guilty, you are guilty of them?

THE DEFENDANT: (Through interpreter) Yes, I was guilty.

(Sentencing Hearing Tr. 4-5).

[21] It will be remembered that the Court adopted defense counsel's calculations of the petitioner's offense level, which were lower than those of either the government or probation.

Therefore, even assuming *arguendo* that Chen could demonstrate Colgan's failure to pursue his best interests constituted deficient performance, because he fails to show that the alleged deficiencies either affected his decision to plead guilty or prejudiced him, he cannot prevail on this claim.

### C. The Petitioner's Plea of Guilty is Constitutionally Valid

The petitioner alleges that his guilty plea was not made voluntarily.  He states that "Chan resigned from the proceedings because he objected to the defense counsel's prodding and coercion of the defendant in order to obtain his guilty plea." (Pet'r Mot. 6).  The petitioner asserts that he "was directed and instructed by his defense counsel to agree to all questions posed by the Court during the [plea] colloquy." Id. at 9.  Petitioner contends that these acts resulted in the "waiver and forfeiture of his [] rights." Id.

It is well-established that "[c]entral to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." Brady v. United States, 397 U.S. 742, 748 (1970).  Thus, during a change of plea hearing, "[the

_____

(Sentencing Hearing Tr. vol. 1, 26, March 26, 2007).  The Court also sentenced at the lower end of the advisory guideline range of 51 to 63 months,  (Sentencing Hearing Tr. vol. 1, 8, May 24, 2007), over the government's recommendation of a sentence of 87 to 108 months.  (Sentencing Hearing Tr., vol. 1, 28, March 26, 2007).

defendant] stands witness against himself." Id.   "But the plea
is more than an admission of past conduct; it is the defendant's
consent that judgment of conviction may be entered without a
trial." Id.  Thus, in order to be constitutionally valid, a
guilty plea must be both "voluntary" and "intelligent." Bousley
v. United States, 523 U.S. 614, 618 (1998) (internal quotation
omitted).

    "A voluntary plea is a plea . . . entered by one fully aware
of  the  direct  consequences,  including  the  actual  value  of
commitments  made  to  him  by  the  court,  prosecutor,  or  his  own
counsel." Brady, 397 U.S. at 755 (internal citation omitted).
Thus,  a  guilty  plea  "must  stand  unless  induced  by  threats  (or
promises  to  discontinue  improper  harassment),  misrepresentation
(including unfulfilled or unfulfillable promises), or perhaps by
promises  that  are  by  their  nature  improper  as  having  no  proper
relationship to the prosecutor's business (e.g., bribes)." Id.

> A defendant who was warned of the usual consequences of
> pleading guilty and the range of potential punishment for
> the offense before entering a guilty plea must make two
> showings in order to set that plea aside as involuntary.
> First, he must show that some egregiously impermissible
> conduct (say, threats, blatant misrepresentations, or
> untoward blandishments by government agents) antedated the
> entry of his plea.  Second, he must show that the misconduct
> influenced his decision to plead guilty, or put another way,
> that it was material to that choice.

Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006).  To
determine the voluntariness of a plea, all of the relevant

circumstances surrounding the plea must be considered.  <u>Brady,</u>
397 U.S. at 749.

There are very limited circumstances in which a guilty plea
can be attacked on collateral review.  <u>Bousley,</u> 523 U.S. at 621.
The voluntariness and intelligence of a plea can only be attacked
on collateral review if that issue raised on direct appeal.  <u>Id.</u>
Failure to do so results in the procedural default of a challenge
to the validity of the defendant's plea.  <u>Id</u>.  "Where a defendant
has procedurally defaulted a claim by failing to raise it on
direct review, the claim may be raised in habeas only if the
defendant can first demonstrate either 'cause' and actual
'prejudice,' or that he is factually innocent."  <u>Id</u>. at 622
(internal citations omitted).  In order for a petitioner to
establish actual innocence, the "petitioner must demonstrate
that, 'in light of all the evidence, it is more likely than not
that no reasonable juror would have convicted him."  <u>Id.</u> at 623
(quoting <u>Schlup</u> v. <u>Delo,</u> 513 U.S. 298, 327-328 (1995)) (internal
quotation omitted).  "Solemn declarations in open court carry a
strong presumption of verity."  <u>Blackledge</u>, 431 U.S. at 74
(1977).

As the petitioner here was apprised of the consequences of
his change of plea and the potential maximum punishment by the
court, in order to demonstrate the invalidity of his plea he must

show that some "egregiously impermissible conduct . . . antedated his plea" and that the "misconduct influenced his decision to plea guilty . . . or that it was material to that choice." Ferrara, 456 F.3d at 290.  In Ferrara, the government withheld important exculpatory evidence from the defendant that tended to negate his guilt.  Id. at 286.  Here, the petitioner maintains that his *own* counsel provided ineffective assistance by failing fully to disclose information about the government's case against him and facts regarding the proceedings to him.  This Court must determine whether or not Colgan's alleged actions constitute "egregiously impermissible conduct" and that this "misconduct influenced [Chen's] decision to plea guilty."  Ferrara, 456 F.3d at 290.

Here, Judge Lindsay conducted a very thorough Rule 11 colloquy.  The petitioner was asked at the change of plea hearing whether his plea was voluntary and he replied in the affirmative. (Plea Hearing Tr. 9).  Also, at the final sentencing hearing, especially because of the confrontation between Colgan and Chen, the Court asked Chen a series of questions once more to determine if he was pleading guilty voluntarily.  (Sentencing Tr. vol. 2, 4-6, May 24, 2007).  Chen replied that he was indeed pleading guilty of his own volition.  Id. at 6.  Now, the petitioner argues that his plea was involuntary due to the conduct of defense counsel.

Simply put, even if taken as true, petitioner's allegations do not render his plea of guilty involuntary.  See <u>Restucci</u> v. <u>Spencer</u>, 249 F.Supp. 2d 33, 43 (D. Mass 2003) (thorough plea colloquy sufficient to sustain voluntariness of the petitioner's change of plea).  Furthermore, as the court in <u>Restucci</u> held that "[a] plea is involuntary [only] if the 'accused does not understand the nature of the constitutional protections he is waiving' or 'because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.'" <u>Id</u>.  Here, the petitioner satisfies neither criteria.  The questions carefully asked of the petitioner by Judge Lindsay at various stages of the proceedings and his responses demonstrate that he understood the nature of the protections he waived and the charges against him.  Consequently, the petitioner's plea of guilty is valid and this claim fails.

**D.    The Court Proceedings Complied with the Mandates of Due Process of Law**

1.    <u>The Indictment Need Not Set Forth the All the Government's Case Against the Defendant</u>

The petitioner asserts

> that the information under which he was indicted by a grand jury was changed and amended by the government, the sentencing court and the probation department when enhanced and aggravating information on 'relevant conduct' is introduced and considered in the sentencing of a defendant after said defendant has pleaded guilty to an indictment and the details thereof.

(Pet'r Mot. 7).  Furthermore, petitioner maintains that

> [o]nce a defendant decides that he is going to plead guilty
> to a charge that he admits to committing, he retains the
> basic right to admit to the offense committed and is aware
> of committing, so changes taking placein the nature and
> gravity of the offense behavior described and listed in the
> indictment should not take place after a plea of guilt.

(Pet'r Mot. 8).  Petitioner asserts that "he was induced to plead

guilty by his defense counsel, believing wholeheartedly that he

was guilty of what the indictment listed as his behavior, not

what was added later, at sentencing and in the Pre Sentence

Report as relevant conduct."  <u>Id</u>.

    Chen pled guilty to the two counts that were listed in the

indictment against him.  (Mot. Opp'n 4).  There are two

constitutional requirements for an indictment: (1) "that it

contains the elements of the offense charged and fairly informs

the a defendant of the charge against which he must defend" and

(2) "that it enables him to plead an acquittal or conviction in

bar of future prosecutions for the same offense."  <u>United States</u>

v. <u>Resendiz-Ponce</u>, 549 U.S. 102, 108 (2007).  Indeed, it is

required that the indictment "shall be a plain, concise, and

definite written statement of the essential facts constituting

the offense charged."  Fed. R. Crim. P. 7(c)(1).  Thus, the

indictment must simply set forth the essential facts that

constitute the offense charged.  <u>See</u> <u>United States</u> v. <u>Fusaro</u>, 708

F.2d 17, 23 (1st Cir. 1983) ("indictment is sufficient if the

offense is described with sufficient clarity to show a violation

of law, and enables the accused to know the nature and cause of the accusation against him and to plead an acquittal or conviction in bar of future prosecution for the same offense").

Again, at the change of plea hearing the Court asked petitioner to listen carefully to what the government would be able to prove were the case to go to trial. (Plea Hearing Tr. 24). The petitioner stated that the had no disagreement with the government's version of the evidence. Id. The information stated by the government at the change of plea hearing is the same information that is set forth in the PSR. It appears the petitioner has misread the sentencing transcripts regarding the sentencing proceedings. In any event, this claim must be denied.

2.   The Sentencing Court Employed the Correct Method in Determining the Existence of a Factual Basis for the Change of Plea[22]

"A plea of guilty is more than a confession . . . it is itself a conviction [and] nothing remains but to give judgment

---

[22] Petitioner also asserts that "in the instant case the sentencing information was wholly determined by the sentencing judge using a preponderance of the evidence standard" (Pet'r Mot. 14) and "[t]he standard of proof used to determine the Petitioner's responsibility for additional quantities to which he had not admitted or been adjudged in possession of, fell below the standard laid down by the Supreme Court." (Pet'r Mot. 16). These assertions are simply untrue and warrant no extended discussion. Chen admitted responsibility during his plea colloquy for the amount of drugs found in the suitcase. That is the drug quantity used at sentencing. The probation recommendation to factor in a quantity of methamphetamine was not followed. See n. 10 supra.

and determine punishment." Boykin v. Alabama, 395 U.S. 238, 242 (1969). "Rule 11 is designed to eliminate any need to resort to a later fact-finding proceeding 'in this highly subjective area.' " McCarthy v. United States, 394 U.S. 459, 469 (1969). During the plea colloquy, the judge is required to ascertain a factual basis to accept a plea of guilty. Id. at 467. "The judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information of an offense included therein to which the defendant has pleaded guilty.' " Id. The "district court 'has a duty,' in plea proceedings, 'to ascertain whether the record permits a conclusion that the plea has a rational basis in fact.'" United States v. Matos-Quinones, 456 F.3d 14, 21 (1st Cir. 2006). The facts recited by the government at the change of plea hearing were intended both to aid the court in its determination of whether a factual basis existed for the plea and to put the defendant on notice of what the prosecution could prove at trial. (Plea Hearing Tr. 24). Petitioner maintains that "admission of guilt carries a Due Process requirement that the defendant actually understands and believes that he is guilty of the facts he is admitting guilt for." (Pet'r Mot. 11). Again, the recitation of evidence at the plea hearing as given precisely for that reason and Chen stated that there was "no disagreement" with what the government recited was his involvement in the crimes.

(Plea Hearing Tr. 29).  No more is required.  This claim must be denied.

   3.   The Court's Explanation for the Sentence Imposed upon the Defendant Satisfied the Requirements of 18 U.S.C. §3553(a)

The petitioner alleges the court failed to adhere to the mandates required by 18 U.S.C. §3553(a).  Section © of 18 U.S.C. §3553 requires only that "the court ordinarily . . . identify the main factors upon which it relies," yet "its statement need not be either lengthy or detailed." United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006). Additionally, the court is not required to engage in "some sort of rote incantation when explicating its sentencing decision." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006).  "Sentences that fall inside a properly calculated guideline sentencing range require a lesser degree of explanation than those that fall outside a guideline sentencing range (whether above or below)." Turbides-Leonardo, 468 F.3d at 41.

Here, the Court engaged in a lengthy discussion with both parties and probation to calculate petitioner's sentence. (Sentencing Tr. vol. 1, 13-25, March 26, 2007).  (Sentencing Tr. vol. 2, 12, May 24, 2007).  The Court also inquired of petitioner whether he understood the PSR.   Based on the record before it and the PSR, the Court adopted defense counsel's recommendation regarding the appropriate offense level and sentenced the

40

petitioner to the lowest sentence within the advisory sentencing guideline range, rejecting defense counsel's request for a departure.   That the court did not engage in a step-by-step explanation alongside the factors set forth in 18 U.S.C. §3553(a) is of no consequence.   See United States v. Jimenez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc) ("a court's reasoning can often be inferred by comparing what was argued by the parties or contained in the presentence report with what the judge did").

Thus, petitioner's claim fails as the Court's explanation satisfies the requirements of 18 U.S.C. §3553©.

**E.   The Petitioner is Not Entitled to a Judicial Remedy under the Vienna Convention on Consular Relations**

The petitioner also asserts that he is entitled to relief for violation of his rights as a foreign national under the Vienna Convention on Consular Relations ("Vienna Convention").[23] Petitioner maintains that pursuant to the decisions of the International Court of Justice ("ICJ") in Case Concerning Avena

---

[23]In relevant part, the Vienna Convention states:
    if [the foreign national] so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the  sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner.  Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this subparagraph.
Vienna Convention on Consular Relations art. 36(1)(b), April 24, 1963 [1970] 21 U.S.T. 77, T.I.A.S. No. 6820.

and Other Mexican Nationals (Mex. v. U.S.), 2004 I.C.J. 12, (Mar. 31)("Avena"),  Lagrand Case (F.R.G. v. U.S.), 2001 I.C.J. 466 (June 27), and Case Concerning the Vienna Convention on Consular Relations (Para. v. U.S.), 1998 I.C.J. 248 (Apr. 9), he is entitled to review and reconsideration of his conviction and sentence because of the failure of the arresting authorities in this case to provide notification to Chinese consular authorities of petitioner's arrest and detainment.  (Pet'r's Mot. 21).

As the Government correctly notes in its response, however, even were there a violation, petitioner would not be entitled to a judicial remedy.  In  Medellin v. Texas, the Supreme Court considered whether the President's February 28, 2005 Memorandum altered its "conclusion that the Avena judgment is not a rule of domestic law binding in state and federal courts."  Medellin v. Texas, 128 S.Ct. 1346, 1367 (2008).  The Court reasoned that "[t]he responsibility for transforming an international obligation arising from a non-self-executing treaty into domestic law falls to Congress."  Id. at 1368.  Thus, the Court held that the Avena judgment is not domestic law.  Id. at 1372. Consequently, this petitioner is not entitled to relief.[24]

---

[24] The Government maintains that the DEA did notify "the Chinese consulate in Washington D.C. by fax on April 6 2006– the day after Chen's arrest – that Chen had been taken into custody." (Mot. Opp'n 21).  Chen maintains that the Government failed to do so.  (Pet'r Mot. 21).  In view of the reasoning above, the factual is of no consequence.

## IV. CONCLUSION

Based on the above analysis, the petitioner's motion to vacate or correct his sentence and for a new trial is **DENIED**, albeit without prejudice to the claim that counsel failed to perfect an appeal as directed by Chen.

SO ORDERED.

/s/William G. Young

_____
William G. Young
District Judge